✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

3:50 pm, Nov 14 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | 23-2899-ADC |
| | * | 23-2900-ADC |
| v. | * | CASE NO. 23-2901-ADC |
| | * | |
| **HUGH EMERSON BERRY JR** | * | **UNDER SEAL** |
| **DERRICK STEVENSON and** | * | |
| **JOSEPH ANDERSON,** | * | |
| | * | |
| **Defendants.** | * | |

*******

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

Your affiant, Charis Chillers, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, deposes and states as follows:

### Introduction and Background

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). As such I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed with the ATF since November 2021. I am currently assigned to the ATF Baltimore Field Division, Baltimore Group II, which investigates violations of federal firearms laws, violent crimes, and narcotics trafficking. I have attended the United States Department of Homeland Security's Criminal Investigator Training Program ("CITP") and ATF's Special Agent Basic Training ("SABT"), both located in Glynco, Georgia, for a combined period of twenty-six weeks. I have received extensive training, both formal and on-the-job, in the provisions of the Federal Firearms Laws and Federal Narcotics Laws administered under Title 18, Title 21 and Title 26 of the United States Code. As an ATF agent, I have conducted and participated in numerous

investigations concerning violations of federal firearm laws, violations of federal controlled substance laws, and the commission of violent crimes. I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms and controlled substance laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace device; (h) the handling, maintenance, and examination of evidence to include electronic devices.

2. Prior to becoming a Special Agent with ATF, I served as an Intelligence Analyst supporting the Federal Bureau of Investigations ("FBI") Terrorist Screening Center ("TSC") for over five years. My role consisted of providing operational coordination and encounter analysis for "Known or Suspected Terrorists" ("KSTs") within the United States and abroad.

3. I submit this Affidavit in support of a criminal complaint and three arrest warrants for **Hugh Emerson BERRY JR.** (YOB: 1984) **Derrick STEVENSON** (YOB: 1996), and **Joseph ANDERSON** (YOB: 1992). Based on the facts in this Affidavit, I respectfully submit that there is probable cause to believe that **BERRY JR., STEVENSON,** and **ANDERSON** violated the following offenses: (a) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841; (b) conspiracy to distribute and possess with intent to distribute controlled dangerous substances, in violation of 21 U.S.C §§ 846 and 841(a)(1); (c) engaging in the business of importing, manufacturing, or dealing in firearms without a Federal Firearms License in violation of 18 U.S.C. § 922(a)(1)(A); and (d) possession and transfer of a machinegun in violation of 18 U.S.C. § 922(o) (the "**SUBJECT OFFENSES**").

4.      This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.  In making this Affidavit, I am relying only on the facts stated herein.

5.      Information in this Affidavit does not always set forth my personal observations, but rather at times reflects information from reports, as well as information provided to me by other law enforcement agents who observed the events described and to whom I have spoken or whose reports I have read.

## Summary of Probable Cause

6.      The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") The Department of Homeland Security Investigations ("HSI"), and Maryland State Police ("MSP"), are investigating a drug and firearm trafficking network spanning the mid-Atlantic of the United States.

7.      During the investigation, HSI, ATF, and MSP investigators identified that **Hugh Emerson BERRY JR.,** hereafter referred to as "**BERRY JR.**" and co-conspirators identified as **Joseph ANDERSON,** hereafter referred to as **"ANDERSON"** and **Derrick STEVENSON**, hereafter referred to as **"STEVENSON"** were selling both illegal narcotics and firearms throughout the Maryland area. During the investigation, ATF used an undercover investigator "UC-1" which led to multiple controlled purchases of drugs to include heroin, fentanyl and

3

methamphetamine aka "crystal meth" as well as firearms and a machine gun conversion device[1]. Those purchases are detailed below.

        **a.**       **May 26, 2023 – Undercover controlled purchase with BERRY JR.**

10. On or about May 26, 2023, UC-1 conducted a controlled purchase of heroin from **BERRY JR**. at a pre-arranged location. At approximately 1:39 p.m., on the same date, UC-1 sent a text message to **BERRY JR.** to let him know that he had arrived at the Costco parking lot, located at 7707 Arundel Mills Circle, Hanover, Maryland, 21076. At approximately 2:53 p.m., UC-1 received a phone call from **BERRY JR.** and **BERRY JR.** told UC-1 that he was turning into the Costco parking lot. At that time, **BERRY JR**. was observed arriving at the location UC-1 purchased approximately 14 grams of heroin/fentanyl mixture from **BERRY JR.,** which was packaged within a small medical marijuana tube for $1,600.

        **b**.       **June 8, 2023 – Undercover controlled purchase with BERRY JR.**

8. On or about June 8, 2023, UC-1 coordinated another controlled purchase of heroin from **BERRY JR.** At approximately 6:55 a.m., UC-1 sent a text message to **BERRY JR.** and asked if he was still available to meet at Maryland Live Casino at 2:30 p.m. **BERRY JR.** responded, "yea or earlier." UC-1 sent a follow up text to **BERRY JR.** inquiring if the price was the same as prior purchase (referring to the May 26, 2023 undercover purchase). **BERRY JR.** responded "yea." At approximately 11:17 a.m., **BERRY JR.** texted UC-1, "I'll be out there at 1 just let me know cause I got something gotta do out there." UC-1 contacted **BERRY JR.** at approximately 2:22 p.m., and **BERRY JR.** answered the telephone and advised that he was sitting in the "kitchen," and he would see UC-1 upon their entry into the casino.

9. Investigators inside the casino observed **BERRY JR.** meet up with UC-1 in the

---

[1] A machine gun conversion device is a device installed on a firearm to convert a semi-automatic firearm to a fully automatic firearm.

4

middle of the casino. **BERRY JR.** handed UC-1 a small tube, that appeared to be a medical marijuana tube and in exchange the UC-1 paid $1,600 BERRY JR. for the suspected heroin. The UC-1 believed he was purchasing heroin, but the drugs were analyzed and confirmed to be 13.991 grams of fentanyl.

        c.      **June 15, 2023– Undercover controlled purchase with BERRY JR.**

10.      On or about June 9, 2023, **BERRY JR.** texted UC-1 at 2:14 p.m., "call me back asap." At approximately 2:26 p.m., UC-1 called **BERRY JR.** and **BERRY JR.** answered. **BERRY JR.** told UC-1 that he had what UC-1 was looking for, and further elaborated that he had four (4) pounds of methamphetamine and wanted $4,200 for each. **BERRY JR.** sent a picture to UC-1 of what appeared to be a methamphetamine crystal. UC1 then called **BERRY JR.** and stated that he was interested in purchasing a pound of methamphetamine.

11.      As a result of the above call between **BERRY JR.** and UC-1, the UC-1 coordinated a time to meet with **BERRY JR.** Specifically, on or about June 15, 2023, UC-1 conducted a controlled purchase of methamphetamine "crystal meth" from **BERRY JR.** At approximately 11:32 a.m. UC-1 texted **BERRY JR**, "yo ill be up there at 130-2 we good?" At approximately 11:49 a.m. **BERRY JR.** called UC-1 and told UC-1 that they were still good to meet at Maryland Live Casino around 2:00 p.m. However, **BERRY JR.** advised that he would be inside the casino around 1:00 p.m. UC-1 contacted **BERRY JR.** but received no answer. Shortly thereafter, **BERRY JR.,** contacted UC-1 at approximately 1:47 p.m. and the UC-1 told **BERRY JR.** that he was turning into the casino parking lot and **BERRY JR.** told UC-1 to come inside of the casino. UC-1 the met with **BERRY JR.** and purchased was approximately a half of a pound of crystal meth[2] for $2,100. As discussed above, **BERRY JR.,** told UC-1 that he was selling one pound of

---

2 An accredited laboratory tested the seized drugs and the drugs were analyzed and confirmed to be 223.88 grams of methamphetamine.

crystal meth for $4,200.

        d.      **July 5, 2023– Undercover controlled purchase with STEVENSON BERRY JR.**

12. On or about July 5, 2023, UC-1 conducted a controlled purchase of methamphetamine a/k/a "crystal meth" from **BERRY JR.** At approximately 12:41 p.m. UC-1 called **BERRY JR.** and they coordinated a meeting time and place. Casino surveillance observed **BERRY JR.** and **STEVENSON** arriving in the same vehicle at approximately 1:48 p.m. At approximately 2:20 p.m., UC-1 arrived at the Maryland Live Casino. UC-1 entered the casino bathroom with **BERRY JR.** and purchased approximately one pound of crystal meth[3] for $4,200. As discussed above, this was the previously agreed upon price. After the purchase, UC-1 departed the casino. Surveillance personnel inside the casino observed **BERRY JR.** meet with **STEVENSON** and hand **STEVENSON** a handful of money (exact amount could not be determined). Investigators believe **BERRY JR.** was giving **STEVENSON** the money from the methamphetamine sale.

        e.      **July 17, 2023– Undercover controlled purchase with ANDERSON and BERRY JR.**

13. On or about July 16, 2023, at approximately 3:10 p.m., **BERRY JR.** contacted UC-1. **BERRY JR.** told UC-1 that he had received a phone call and was able to get a 9mm handgun for $950. UC-1 asked **BERRY JR.** to hold the firearm until Tuesday. **BERRY JR.** told UC-1 that he would hold the firearm and asked if UC-1 still wanted "the other thing too," which was believed to be a reference to crystal meth which UC-1 had purchased on two other separate occasions.

14. UC-1 told **BERRY JR.** that he had to see what money they could get together and

---

[3] An accredited laboratory tested the seized drugs and the drugs were analyzed and confirmed to be 447 grams of methamphetamine.

would call him the following morning. At approximately 6:05 p.m., UC-1 called **BERRY JR.** and told him that they could get the money for the crystal meth on July 17, 2023. UC-1 confirmed that he was going to purchase the pound of crystal meth and the 9mm handgun on July 17, 2023.

15.     On or about July 17, 2023, HSI, ATF, and MSP conducted a controlled purchase from **BERRY JR.** At approximately 11:32 a.m., UC-1 sent the following text message to **BERRY JR**, "about to go get that money everythin straight." At approximately 11:34 a.m., **BERRY JR.** told UC-1 that they needed to move the meeting back due to his wife not getting off from work until 2:30 p.m. Soon thereafter at 3:04 p.m., **BERRY JR.** stated, "everything gravy, everything gravy, I'll be there by 4 o clock."

16.     **BERRY JR.** called UC-1 three minutes later and stated that his brother just called him and told him that they had a "second one", which UC-1 believed was a reference to another handgun for sale. **BERRY JR.** stated that it was the same caliber and price as the other handgun and that they were trying to get rid of them. UC-1 told **BERRY JR.** that he would purchase the second firearm as well. UC-1 then asked **BERRY JR.** if he or his brother would be bringing the second firearm down. **BERRY JR.** told UC-1 that they would both be there.

17.     At approximately 3:38 p.m., **BERRY JR.** called UC-1 and advised that his brother (believed to be referring to **ANDERSON**) could not get his hand on the second firearm. However, **BERRY JR.** advised that his brother had a "Nintendo Switch", which investigators believe was a reference to a machine gun conversion device[4] and wanted $1,200 for it.

18.     At approximately 4:55 p.m., UC-1 arrived at the agreed upon location, Maryland Live Casino at Arundel Mills. UC-1 contacted **BERRY JR.**, who advised that they were about to be at the Maryland Live Casino. **BERRY JR.** was observed arriving in the **TARGET VEHICLE**.

---

[4] Based on my training, knowledge, and experience, I know that individuals in the Baltimore, Maryland area use the term Nintendo Switch to reference a machine gun conversion device.

An individual later identified as **Joseph ANDERSON** exited the front passenger seat, believed to be **BERRY JR.'s** brother, and opened the rear passenger seat door of UC-1's vehicle. **ANDERSON** placed an object wrapped in a grey t-shirt on the rear passenger floorboard of UC-1's vehicle. **ANDERSON** placed an object wrapped in a grey t-shirt on the rear passenger floorboard of UC-1's vehicle. **BERRY JR.** was then observed entering the front passenger seat of UC-1's vehicle. UC-1 examined the items wrapped in the grey t-shirt and ultimately purchased approximately one pound of methamphetamine "crystal meth"[5], one (1) Polymer 80 9mm pistol, and one (1) machine gun conversion device for $6,150.

      f.      **July 19, 2023– Undercover controlled purchase with ANDERSON and BERRY JR.**

19. On July 18, 2023, at approximately 9:56 p.m, **BERRY JR.** texted UC-1 a photograph of one (1) AR-pistol and one (1) Glock style privately made firearm, accompanied with the text "found two for yu." There was further discussion between **BERRY JR.** and UC-1 about the price and other firearms. For example, **BERRY JR.** stated, "They want $950" and "they said they got 3 30 magz to go wit it".

20. On or about July 19, 2023, UC-1 conducted a controlled purchase from **BERRY JR. BERRY JR.** contacted UC-1 and changed the meeting location to the Burlington Coat Factory at Arundel Mills Mall. UC-1 met with both **BERRY JR.** and **ANDERSON** and they both entered UC-1's vehicle. UC-1 purchased one (1) AR styled 3-D printed pistol with a brass catcher[6] and three (3) 5.56 magazines for $2,400.

      g.      **August 24, 2023– Undercover controlled purchase with STEVENSON and BERRY JR.**

---

[5] An accredited laboratory tested the seized drugs and the drugs were analyzed and confirmed to be 448.62 grams of methamphetamine.

[6] A brass catcher is a net-like attachment that connects to the forearm of a firearm to prevent shell casings from being scattered after they are ejected from the firearm.

21. On August 24, 2023, UC-1 coordinated another controlled purchase of methamphetamine "crystal meth" from **BERRY JR**. Prior to the purchase, law enforcement utilized video surveillance (CCTV) to observe activity at **BERRY JR.'s** residence. **STEVENSON** was observed entering and exiting the **TARGET LOCATION 1** numerous times. At approximately 1:47 p.m., **STEVENSON** was observed carrying a grey plastic shopping bag into the residence which appeared to contain a heavy object based on how it hung in **STEVENSON's** hand. At approximately 2:29 p.m., **BERRY JR.** and **STEVENSON** departed the **BERRY JR.'s** residence in **STEVENSON's** vehicle with **BERRY JR.** driving the vehicle. Law enforcement conducted mobile surveillance and followed vehicle to the Burlington Coat factory located at 7002 Arundel Mills Cir. #7777 Hanover, MD where the controlled purchase was scheduled to take place.

22. When **BERRY JR.** and **STEVENSON** arrived at the meeting location, the **BERRY JR.** contacted UC-1 and advised of his location. UC-1 traveled to **BERRY JR's** location and **BERRY JR.** entered UC-1's vehicle. UC-1 purchased approximately one pound of crystal meth from **BERRY JR.** that was wrapped in a grey plastic shopping bag for $4,200. The grey plastic bag is consistent with the grey plastic bag that law enforcement observed **STEVENSON** bring into **BERRY JR.'s** residence earlier that day.

      h.     **August 28, 2023 – Undercover controlled purchase with ANDERSON and BERRY JR.**

23. On or about August 25, 2023, **BERRY JR.** contacted UC-1 and advised that he had two (2) handguns for sale for $1,100 each. UC-1 advised **BERRY JR.** that he wanted both firearms.

24. On or about August 28, 2023, UC-1 scheduled a controlled purchase for the two (2) firearms from **BERRY JR**. Prior to the controlled purchase, investigators conducted physical,

9

electronic, and video surveillance of **BERRY JR.** At approximately 1:00 p.m. the vehicle registered to **BERRY JR.** was observed leaving his residence and traveling to **ANDERSON's** residence.

25. Investigators continued surveillance and observed **BERRY JR.** knocking on the front door of **ANDERSON's** residence and **ANDERSON** exited his residence holding a grey Target plastic shopping bag with what appeared to be a green shoebox inside. Based on how the plastic bag hung in **ANDERSON's** hand, investigators believed that the shoebox contained a heavy object. **ANDERSON** and **BERRY JR.** were observed entering the Nissan and traveling in the direction towards the controlled purchase meeting location, the Arundel Mills Mall. Surveillance units followed the Nissan until it entered the confirmed area for the controlled purchase.

26. At approximately 5:05 p.m., **BERRY JR.** contacted UC-1 and advised that he was located near the Crafty Crab located at 7000 Arundel Mills Cir. R2 Hanover, MD. UC-1 traveled to the provided location and **BERRY JR.** entered UC-1's vehicle. **BERRY JR.** provided UC-1 with a grey Target plastic shopping bag containing a green Crocs shoe box. UC-1 opened the shoe box and discovered two (2) handguns and purchased the firearms from **BERRY JR.** for $2,100.

      i. **September 20, 2023 – Undercover controlled purchase with ANDERSON and BERRY JR.**

27. On or about September 20, 2023, UC-1 scheduled a controlled purchase for three (3) firearms from **BERRY JR**. Prior to the controlled purchase, investigators conducted physical, electronic, and video surveillance of **BERRY JR.** and **ANDERSON**. Prior to the controlled purchase, investigators conducted physical, electronic, and video surveillance of **BERRY JR.** and **ANDERSON**.

28. At approximately 1:50 p.m., investigators observed **BERRY JR.** entering the 2023

light grey Nissan Altima bearing MD tag 2FP3440. A law enforcement database check indicated that the vehicle is registered to Katrina McFarland from Rockville, MD. This vehicle was **BERRY JR.'s** method of transportation for the controlled purchase on August 28, 2023. The vehicle departed an alley near 640 N. Mulberry Street Hagerstown, MD and was observed by surveillance units arriving at **ANDERSON's** residence, 9515 White Pillar Terrace Gaithersburg, MD 20882. At approximately 2:51 p.m. **ANDERSON** was observed walking from the direction of his residence carrying a white plastic bag. Investigators conducting surveillance observed **ANDERSON** meeting unknown individuals on the street/sidewalk before entering the rear passenger seat of the Nissan sedan.

29. At approximately 2:47 p.m., UC-1 contacted **BERRY JR.** to inquire about his location. **BERRY JR.** advised that he was in the Arundel Mills Mall parking lot, where the UC had picked him up on previous deals. The UC traveled to the area and located **BERRY JR.** standing in the parking lot holding a white plastic bag. **BERRY JR.** entered the UC vehicle with the white plastic bag, which appeared consistent with the same plastic bag that law enforcement observed **ANDERSON** leaving his residence with earlier in the day before entering the vehicle with **BERRY JR.**

30. Within the plastic bag was an additional white plastic bag, and black plastic bag used to hold and conceal three (3) firearms and one (1) 9mm magazine. The first pistol was a black 9mm Polymer 80 pistol with a PATMOS[7] slide. The second pistol was a gray 9mm Polymer 80 pistol with a black slide and threaded barrel. The third pistol was a gray .40 caliber Polymer 80 pistol with a black Glock 23 slide. UC-1 purchased the firearms and magazine from **BERRY JR.**

---

[7] PATMOS slides are firearm slides produced by Patmos Arms that can be used as a replacement for Glock original slides or for individuals manufacturing Glock-style pistols.

for $3,300 and departed the area.

    j.  **October 16, 2023 – Undercover controlled purchase with ANDERSON. STEVENSON and BERRY JR.**

  31. On or about October 15, 2023, **BERRY JR**. contacted UC-1 and asked, "Did yu want me to get the whole p"[8]. UC-1 responded, "Right now the half," indicating that he wanted to only purchase a half of pound of crystal meth. UC-1 advised **BERRY JR.** that he would contact him in the morning if he was able to purchase a pound of crystal meth. **BERRY JR.** replied, "He'll be at work in the morning tryna go get everything now." UC-1 confirmed that he would only be purchasing the half of pound of crystal meth.

  32. Using video surveillance law enforcement observed **BERRY JR.** arrive at **STEVENSON's** residence located at 63 East Baltimore Street, Hagerstown, MD 21740 at approximately 11:02 p.m. **STEVENSON** was observed leaving his residence and opening the passenger door of **BERRY JR's** vehicle and leaning in. Video surveillance from CCTV captured the encounter between **STEVENSON** and **BERRY JR.** and a review of the footage showed that their encounter lasting approximately thirty seconds. Based on this observation, investigators believe that **STEVENSON** was providing **BERRY JR.** the methamphetamine for the sale the following day.

  33. On or about October 16, 2023, UC-1 scheduled a controlled purchase for one (1) firearm and a half pound of crystal meth from **BERRY JR.** Prior to the controlled purchase, investigators conducted physical, electronic, and video surveillance of **BERRY JR.** and **ANDERSON.**

  34. At approximately 3:57 p.m., **BERRY JR.** was observed outside **ANDERSON's**

---

[8] Based on my knowledge, training, and experience, I know that "p" is an abbreviated form for "pound," which is used to reference the weight for methamphetamines.

12

residence. **BERRY JR.** later entered the residence. At approximately 3:58 p.m., **BERRY JR.** and **ANDERSON** were observed leaving the residence. Shortly thereafter they both left the residence and ultimately met UC-1 at Live! Casino & Hotel Maryland located at 7002 Arundel Mills Cir. #7777 Hanover, MD. **BERRY JR.** entered the UC-1's vehicle, and the UC purchased the half pound of crystal meth9 for $2,100. **BERRY JR.** directed UC-1 to drive into the parking garage. **BERRY JR.** and UC-1 traveled to the fourth level of the parking garage where **ANDERSON** was located. UC-1 provided **BERRY JR.** with $1,100 USD and **BERRY JR.** exited the vehicle and gave the money to **ANDERSON.** After receiving the money, **ANDERSON** walked to UC-1's vehicle and handed UC-1 a black Polymer 80 pistol with a black Glock 23 slide.

35. At present, an accredited laboratory has tested some of the narcotics purchased from **BERRY JR.** and have concluded the following results: 14.872 grams of heroin, fentanyl, and Xylazine mix; 13.991 grams of fentanyl; and 223.88 grams of methamphetamine.[10]

36. The eight (8) firearms obtained from the purchases involving **BERRY JR.** and **ANDERSON** were maintained in ATF custody and test fired. All firearms were operational as a projectile was expelled through the barrel by the force of an explosion. The machine gun conversion device placed in UC-1's vehicle by **ANDERSON** was examined by the ATF Firearms and Ammunition Technology Division (FATD) and identified as a machine gun conversion device. It was concluded that the device could be altered to allow a semi-automatic pistol to expel multiple projectiles with the single pull of the trigger.

---

9 Preliminary testing of the seized drugs were analyzed and confirmed to be methamphetamine.
10 The narcotics tested were obtained during the undercover purchases conducted on the following dates: May 26, 2023 (14.872 grams of heroin and fentanyl), June 8, 2023 (13.991 grams of fentanyl), June 15, 2023 (223.88 grams of methamphetamine), July 5, 2023 (447.76 grams of methamphetamine), and July 17, 2023 (448.62 grams of methamphetamine).

## Conclusion

37.     Based on the foregoing, I respectfully submit that there is probable cause to issue the request criminal complaint and Arrest Warrant.

_____
Charis Chillers, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __9th_____ of November 2023.

_____
Honorable A. David Copperthite
United States Magistrate Judge
District of Maryland